**MORTGAGE RECOVERY LAW GROUP, LLP**
PAUL A. LEVIN (State Bar No. 229077)
LAUREN M. GIBBS (State Bar No. 251569)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone: (818) 630-7900 Facsimile: (818) 630-7920
e-mail: plevin@themrlg.com, lgibbs@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
DOUGLAS T. HOFFMAN (to seek admission pro hac vice)
3501 Fairfax Avenue, E-7006
Arlington, Virginia 22226
Telephone: (703) 516-5383
e-mail: dohoffman@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>NJ LENDERS CORPORATION,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

## INTRODUCTION

1. Pursuant to written agreements, defendant NJ Lenders Corporation ("NJLC" or "Defendant") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of their agreements, NJLC promised to indemnify WaMu for any losses arising either directly or indirectly, or in any way as a result of an inaccurate or incomplete application or other documentation for loans brokered by NJLC.

2. After WaMu funded the loans from NJLC, WaMu sold NJLC-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least twenty-three (23) mortgage loans brokered by NJLC ("NJLC Defective Loans").

3. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R" or "Plaintiff") incurred losses settling the Trustee's claims. FDIC-R's losses resulted from inaccurate or incomplete loan applications or other documentation prepared by or at the direction of NJLC including, *inter alia*, NJLC's submission of loan applications and supporting material that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4. FDIC-R demanded that NJLC honor its written contractual indemnification obligation. Because NJLC has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

## PARTIES, JURISDICTION, AND VENUE

5. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to

all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6. NJLC is a New Jersey corporation with its principal place of business in Little Falls, New Jersey. NJLC is registered and licensed to do business in California and transacts business from a branch office in Los Angeles, California.

7. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8. NJLC contractually agreed to venue in this district. *See* 2004 Mortgage Broker Agreement, ¶ 21, attached hereto as Exhibit 1. Venue is also proper in this district pursuant to 28 U.S.C § 1391 because NJLC resides in this district in that it transacts business from its branch office in Los Angeles, California. Additionally, venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.

## FACTUAL ALLEGATIONS

9. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10. On information and belief, NJLC engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

### A. NJLC's Contractual Obligations

11. NJLC and WaMu had a contractual business relationship, governed by mortgage broker agreements, including the 2004 Mortgage Broker Agreement ("2004 Agreement") and 2005 Mortgage Broker Agreement ("2005 Agreement") (collectively, the "Agreements") attached hereto as Exhibits 1 and 2 respectively.

12. Under the Agreements, NJLC was responsible for, among other things, interacting directly with and interviewing the borrower, counseling and assisting the borrower in the financing process, collecting relevant information and documentation in support of the loan application, preparing the loan application and submission package, and submitting the completed loan package to WaMu. NJLC agreed to only submit loan applications that met all applicable requirements established by WaMu.

13. NJLC was compensated for any loans funded by WaMu.

14. Pursuant to the Agreements, NJLC expressly agreed to indemnify WaMu as follows:

> [NJLC] will indemnify, defend and hold [WaMu] … harmless from any and all costs, claims, charges, actions, causes of action, losses or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of [NJLC's] negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of [NJLC]. (2004 Agreement).

> [NJLC] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs (including, but not limited to, reasonable attorneys' fees and costs incurred by [WaMu], with or without suit) which in any way arise out of or relate to an alleged act or omission of [NJLC] . . . in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement. (2005 Agreement).

### B. The NJLC Defective Loans

15. As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on WaMu's sale of defective loans into the RMBS Trusts, including the NJLC Defective Loans. As a result of the resolution of those claims, FDIC-R incurred losses in connection with the NJLC Defective Loans.

16. Pursuant to the Agreements, NJLC brokered the 23 NJLC Defective Loans summarized on Exhibit 3 attached hereto.

17. The NJLC Defective Loans failed to meet "all applicable requirements" and "terms and conditions of [the] Agreement," and contained inaccurate and incomplete applications or other documentation, because of misrepresentations in the application materials, including but not limited to misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.

18. As an example, the loan documents for borrower UC for two mortgage loans in August 2005 contained numerous deficiencies, inaccuracies, and material misrepresentations. NJLC prepared and submitted loan application documents for UC that failed to disclose his ownership of, and $435,000 of debt originated by NJLC on, a property he purchased in July 2005.

19. As another example, NJLC prepared and submitted loan application documents for CM that included a living expense payment history that was signed by someone other than his landlord to hide that CM's relatives owned the residence.

### C. WaMu's Sale of the NJLC Defective Loans to the RMBS Trusts

20. After WaMu funded the NJLC Defective Loans, WaMu sold each of them to the RMBS Trusts.

21. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies NJLC provided, WaMu provided similar representations, obligations, and remedies to the RMBS Trusts as those made by NJLC regarding the quality and characteristics of the loans, the borrowers, and the collateral.

22. The RMBS Trusts suffered losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the NJLC Defective Loans.

**D. FDIC-R's Settlement with Trustee**

23. On December 30, 2008, Trustee filed a proof of claim with FDIC-R asserting that WaMu sold the RMBS Trusts defective loans. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from defective loans that WaMu sold to the RMBS Trusts, including the NJLC Defective Loans.

24. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the NJLC Defective Loans. Given NJLC's role and conduct in connection with the NJLC Defective Loans, including NJLC's relationship to the borrowers and that the loan information, documentation, and application packages were prepared, gathered, and submitted by NJLC, FDIC-R's liability exposure to the Trustee arose out of inaccurate or incomplete loan applications or other documents prepared by or at the direction of NJLC.

25. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

26. On June 30, 2017, the Superior Court of the State of California approved Trustee's application to accept a settlement of its claims against FDIC-R for FDIC-R's payment of more than $3 billion, including claims arising out of or relating to the NJLC Defective Loans. Settlement of the Trustee's claims for that court-approved amount was objectively reasonable. On September 8, 2017, FDIC-R issued a $3,006,929,660 Receivership Certificate in settlement of Trustee's claims, thereby suffering a loss under the Agreements' indemnification provisions. FDIC-R's claims are timely because they are brought within six years of the date FDIC-R suffered a loss. 12 U.S.C. § 1821(d)(14).

**E. NJLC's Breach of the Indemnification Obligations**

27. On August 13, 2021, FDIC-R sent a demand letter to NJLC seeking indemnification for its losses arising out of NJLC's acts and omissions in connection with the NJLC Defective Loans. NJLC has not honored its obligation to indemnify under the Agreements.

28. The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce NJLC's obligations under the Agreements, FDIC-R has retained the firm of Mortgage Recovery Law Group, LLP and agreed to pay it reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29. All conditions precedent to the relief sought in this action have been fulfilled.

## CLAIM FOR RELIEF

### (Contractual Indemnification)

30. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31. The Agreements are valid and enforceable contracts.

32. Plaintiff substantially performed all its obligations under the Agreements.

33. In connection with settlement of the claims involving the NJLC Defective Loans, FDIC-R incurred substantial losses and damages arising directly or indirectly in any way as a result of an inaccurate or incomplete applications or other documentation prepared by or at the direction of NJLC, or relating to an alleged act or omission of NJLC in connection with a loan applicant, loan application package, mortgage loan, or the 2005 Agreement.

34. FDIC-R is entitled to indemnification from NJLC for the losses FDIC-R suffered settling the Trustee's claims.

35. NJLC breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against NJLC in an amount to be proven at trial for its breach of its indemnification obligations;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E. Any other relief as the Court deems just and proper.

DATED: February 27, 2023

MORTGAGE RECOVERY LAW GROUP, LLP

By: /s/ Paul A. Levin
Paul A. Levin
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

DATED: February 27, 2023

FEDERAL DEPOSIT INSURANCE CORPORATION

By: /s/ Douglas T. Hoffman
Douglas T. Hoffman (to seek admission to pro hac vice)
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

COMPLAINT