**FOSTER GRAHAM MILSTEIN & CALISHER, LLP**
Daniel K. Calisher (State Bar No. 181821)
Michael A. Rollin (State Bar No. 251557)
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
Email: mrollin@fostergraham.com

Attorneys for Defendant NJ Lenders Corporation

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>NJ LENDERS CORPORATION<br><br>Defendants. | Case No.: 8:23-cv-00349-JWH-KES<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR CONTRACTUAL INDEMNITY**<br><br>Hearing Date: September 8, 2023<br>Time: 9:00 a.m.<br>Courtroom: 9D<br><br>Judge John W. Holcomb<br>Trial Date: tbd |

PLEASE TAKE NOTICE that on September 8, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 9D of the above-entitled court located at 411 W. 4th Street, Santa Ana, California, Defendant NJ Lenders Corporation ("NJ Lenders") will and hereby does move to dismiss the First Amended Complaint filed by Plaintiff (Doc. No. 22), on the grounds set forth in NJ Lender's Motion to First Dismiss First Amended Complaint for Factual Indemnity.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 25, 2023 and July 26, 2023. It also follows detailed conferrals on the same topics in advance of Defendant's initial motion to dismiss, as stated in ECF 15 at 1, which included sending a draft of the motion to dismiss to Plaintiff's counsel on May 17, 2023 and receiving a written response in opposition on June 6, 2023.

# MOTION TO DISMISS AMENDED COMPLAINT FOR CONTRACTUAL INDEMNITY

## Memorandum of Points and Authorities

Defendant NJ Lenders Corporation ("Defendant"), through its undersigned counsel, hereby submits its Motion to Dismiss Amended Complaint, ECF 22, for Contractual Indemnity filed by Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).

## I.    Relevant Background

According to Plaintiff, Defendant brokered the 23 mortgage loans at issue in this case[1] under one of two agreements: (1) an October 18, 2004 broker agreement ("2004 Agreement") with Long Beach Mortgage Company ("Long Beach"), ECF 22-1; and (2) a June 29, 2005 mortgage broker agreement with "Lender" ("2005 Agreement"), which is defined as Washington Mutual Bank, FA, Washington Mutual Bank fsb, Long Beach, "and any entity that controls, is controlled by or is under common control with any of them," ECF 22-2. These agreements are collectively referred to herein as the "Agreements."

The typical chain of transactions leading to the securitization of a mortgage loan in an RMBS Trust is described by Plaintiff itself in a case referred to at paragraph 23 of its Amended Complaint, *Deutsche Bank National Trust Company v. F.D.I.C., et al.*, Case No 09-CV-1656-RMC, in the United States District Court for the District of Columbia ("D.C. Case"). **Exhibit 1** (D.C. ECF 20-1 at ¶¶ 4-5). This is the case that allegedly triggered the underlying settlement agreement which, in turn, allegedly created Defendant's indemnification liability. ECF 22, ¶¶ 23-26. It is thus integral to Plaintiff's allegations and the Court may consider these materials without converting this motion to dismiss to one for summary judgment. *E.g.*, *United States v. Ritchie*, 342

---

[1] Defendant cannot confirm this because Plaintiff does not adequately identify the loans at issue. *See* ECF 22-3 (providing neither loan numbers nor Applicant names).

F.3d 903, 907-08 (9th Cir. 2003) (consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment). The Court may also take judicial notice of filings in the D.C. Case because they are directly related to the matters at issue in this case. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992).

As generally alleged, Defendant introduced borrowers (called "Applicants" in the Agreements) to a Washington Mutual-affiliated mortgage originator, who funded the loans. ECF 22, ¶¶ 12, 21. The originator transferred the loans to the institution sponsoring the securitization, usually an affiliate of the originator. **Exhibit 1** (D.C. ECF 20-1 at ¶ 4). The sponsor, in turn, transferred the loans to a depositor, usually also an affiliate. *Id.*; *see also id.* at 4-5 n. 3-4 (describing this process with examples). The depositor placed the loans into the RMBS Trusts. *Id. See also Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 109 F.Supp.3d 179, 182-85 (D.D.C. 2015) (providing background on mortgage securitizations and the role of the parties to these securitizations).

Upon securitization, Deutsche Bank National Trust Company ("DBNTC") was appointed trustee for the RMBS Trusts, ECF 22, ¶ 2, though various Washington Mutual entities—some of which have since been acquired by JP Morgan Chase & Co. ("JPMC")—continued to administer the trusts and the loans as master servicer or servicer, among other roles, **Exhibit 2** (D.C. ECF 32-1); *see also* **Exhibit 3** (D.C. ECF 1-1, at 7, asserting that Washington Mutual entities "generally served as 'servicer' or 'master servicer' with respect to the mortgage loans held by the Trusts"); *see also* **Exhibit 2** (D.C. ECF 32-1, showing the various participants). When Washington Mutual failed, some parts were sold off to JPMC, and Plaintiff was appointed receiver of whatever was left. *Deutsche Bank Nat. Trust Co.*, 109 F.Supp.3d at 186; *see also* ECF 22, ¶ 5 (alleging its receivership).

On August 26, 2009, DBNTC sued Plaintiff in the D.C. Case. ECF 22, ¶ 23. Although Plaintiff's Amended Complaint in this case states that DBNTC's claims in

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR CONTRACTUAL INDEMNITY

the D.C. Case were for losses associated with loan-specific breaches of representations and warranties, *id.*, DBNTC's complaint and the subsequent settlement agreement between DBNTC and Plaintiff (which form the bases for Plaintiff's indemnification claims in this case) confirm that DBNTC's claims were allegedly for both breaches of representations and warranties ("Rep and Warranty Claims") as well as for losses suffered as a result of improper loan servicing ("Servicing Claims"), **Exhibit 4** (D.C. ECF 32, ¶¶ 31, 38, 39, 40, 48, 49, 63, 87, 89, 93, 94, 95, 103); **Exhibit 5** (Settlement Agreement, ¶ Fifth Recital); *see also id.*, § 3.03(y) (releasing Rep and Warranty and Servicing Claims).

Plaintiff, as a defendant in the D.C. Case, asserted that the liability for all the claims rested with JPMC and argued that DBNTC failed to join JPMC as an indispensable party. **Exhibit 1** (D.C. ECF 20-1 at 18-23). DBNTC later amended its complaint in the D.C. Case to add JPMC and Washington Mutual Mortgage Securities Corp. ("WMMSC"), which by then had been acquired by JPMC, as defendants. **Exhibit 4** (D.C. ECF 32). On summary judgment, Plaintiff and JPMC argued over which was liable on DBNTC's claims. *Deutsche Bank Nat. Trust Co.,* 109 F.Supp.3d at 196. On June 17, 2015, the D.C. court held that JPMC assumed some but not all of Washington Mutual's pre-sale liabilities. *Id.,* at 212-13 (D.D.C. 2015).

After the D.C. court's summary judgment ruling, Plaintiff and DBNTC entered into a settlement agreement pursuant to which Plaintiff gave DBNTC a receivership certificate in the amount of $3,006,929,660. ECF 22, ¶ 25. A receivership certificate is not a cash payment. *See Battista v. F.D.I.C.*, 195 F.3d 1113, 1116 (9th Cir. 1999) (holding FDIC may pay claims with a receiver's certificate instead of cash). Rather, a receivership certificate evidences a right to a pro rata share of the defunct institution's assets—if any. *Resolution Trust Corp. v. Titan Financial Corp.*, 36 F.3d 891, 892-93 (9th Cir. 1994); *see also* 12 U.S.C. § 1821(i)(2) (providing that creditors are entitled to the shares they would be entitled to had FDIC not been appointed). Nor has Plaintiff

pleaded that it made any actual payment to DBNTC on account of any of DBNTC's claims (which necessarily include the 23 loans at issue in this case).

On June 30, 2017, a California Superior Court approved the settlement, ECF 22, ¶ 25, and, on that basis, DBNTC dismissed its claims against Plaintiff, JPMC, and WMMSC in the D.C. Case, **Exhibit 6** (D.C. ECF 203). Plaintiff now asserts indemnification claims for losses allegedly caused by 23 defective loans against Defendant under the Agreements, asserting it is entitled to indemnification because issuance of the receivership certificates constitutes a "loss." ECF 22, ¶¶ 25-26.

Defendant moves to dismiss because there are numerous defects in the Amended Complaint, including:

1. Plaintiffs' claims are not ripe because it has not suffered an actual loss. Ripeness is decided under a Rule 12(b)(1) standard.

2. Despite the fact that DBNTC sued Plaintiff for losses arising from both Rep and Warranty and Servicing Claims, Plaintiff has not joined the master servicers and/or servicers responsible for Servicing Claims but, instead, has improperly recast the "losses" as arising solely from Rep and Warranty Claims. Plaintiff's non-joiner of parties responsible for losses it seeks to recover violates Fed. R. Civ. P. 19 and requires joinder or dismissal under Fed. R. Civ. P. 12(b)(7).

3. Plaintiff is not entitled to indemnification as a matter of law because:

    (a) it has not suffered a loss unless and until it makes a cash payment to DBNTC, which is a predicate for indemnification; and/or

    (b) it has not pleaded that any of the 23 loans *caused* any loss incurred in connection with the D.C. Case, which is also required for indemnification under the Agreements.

These issues are raised on a motion under Fed. R. Civ. P. 12(b)(6).

## II. Legal Standards

### A. Ripeness

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Subject matter

jurisdiction does not exist over claims which are not ripe for adjudication. *See Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir. 2001).

### B.  Failure to Join Indispensable Parties

Rule 19(a) of the Federal Rules of Civil Procedure provides that a non-party must be joined where either "(A) in that person's absence, the court cannot afford complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may…leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). Where joinder is not feasible, the Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In making this determination, the Court considers "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id*.

### C.  Failure to State a Claim

"A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory." *Arabian v. Organic Candy Factory*, No. 2:17–cv–05410–ODW–PLA, 2018 WL 1406608, at *2 (C.D. Cal. Mar. 19, 2018) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). Under the federal pleading standard adopted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), unless heightened pleading applies, the factual "allegations must be enough to raise a right to relief above the speculative level" such that the complaint "contain[s] sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Arabian*, 2018 WL 1406608, at *2 (quoting from *Twombly* and *Iqbal*). In making this determination, the Court need not accept as true "allegations contradicted by the complaint's attached exhibits…[or] allegations contradicted by judicially noticed facts…[and] matters of public record, including pleadings, orders, and other papers filed with the court." *Smith v. Sacramento Unified Sch. Dist.*, No. CIV S-07-0628 MCE GGH PS, 2007 WL 3341387, at *3 (N.D. Cal. Nov. 9, 2007) (citations omitted). Likewise, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id*.

### III. Argument

#### A. The claim is not ripe because Plaintiff has not pleaded it has suffered a loss.

Plaintiff alleges its settlement of the D.C. Case caused it to suffer losses in arising out of the at-issue loans. ECF 22, ¶ 26. The Court ought not credit these allegations, however, because they contradict documents referred to in the Complaint or that the Court may take judicial notice of. *Smith*, 2007 WL 3341387, at *3.

The settlement agreement and the D.C. Case file show Plaintiff has not plausibly pleaded an actual loss because issuing a receivership certificate does not create a loss unless and until cash or some other asset is delivered to the creditor. *Resolution Trust Corp.*, 36 F.3d at 892-93; 12 U.S.C. § 1821(i)(2). Since issuance of the receivership certificate is the only "loss" pleaded by Plaintiff, *see also* ECF 22-3 (stating the original loan amounts but not any loss amounts), there is no indemnification obligation (discussed more below).

Therefore, Plaintiff's claims against Defendant are unripe and should be dismissed for lack of subject matter jurisdiction under *Texas v. United States* and *Cardenas v. Anzai*, cited above.

### B. Plaintiff failed to join one or more indispensable parties.

Rule 19 requires joinder of JPMC and any other master servicer or servicer because the losses Plaintiff alleges must be covered by Defendant were caused, at least in part, by loan servicing. As Plaintiff itself argued in the D.C. Case:

> As the plain language of the P&A Agreement shows, and DBNTC agrees, JPMC assumed all Trust-related liabilities and obligations, including liability for any claims arising from WaMu's pre-failure repurchasing and servicing obligations, in connection with JPMC's purchase of WaMu's overall banking operations. As demonstrated above, JPMC now bears potential liability to DBNTC and is, therefore, a required party to litigation concerning the alleged breach of WaMu's repurchase *and servicing* obligations. If this litigation were to continue without JPMC as a party, and the Court were to find that JPMC is the liable party, there could be no complete relief among the existing parties because there would be no liable defendant. See Capitol Med. Center, 677 F. Supp. 2d 193-94.

**Exhibit 1** (D.C. ECF 20-1 at 22) (emphasis added). Indeed, Plaintiff thought it inexplicable that DBNTC had not joined JPMC as a defendant. *Id.* In response to those arguments, DBNTC amended its complaint to add JPMC. **Exhibit 4** (D.C. ECF 32).[2]

Nevertheless, Plaintiff failed to join JPMC or anyone else responsible for the servicing losses to *this* action, leaving Defendant in precisely the same condition Plaintiff argued was untenable in the D.C. Case. Further, despite its prior joinder arguments, Plaintiff did not state: "(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person," as required by Fed. R. Civ. P. 19(c). *E.g.*, *Bickoff v. Wells Fargo Bank, N.A.*, No. 11–CV–02452 BEN (WVG), 2012 WL 3637381, at *3 (S.D. Cal. Aug. 20, 2012).[3]

In an apparent effort to avoid the joinder issue altogether, Plaintiff alleges in its Amended Complaint that it was only liable to DBNTC for Rep and Warranty Claims. ECF 22, ¶ 26. However, that is not consistent with either DBNTC's claims in the D.C.

---

[2] In addition to JPMC's pre-sale liability, it has also been a master servicer or servicer for some or all of the loans in the RMBS Trusts, which necessarily includes the 23 loans in this case, since 2008. See **Exhibit 8** (D.C. ECF 173, at 8).

[3] Even if the Court finds dismissal is not immediately warranted, it should order Plaintiff to amend its complaint to comply with Rule 19(c). *Kimthu Trinh v. Wells Fargo & Company*, No.: 3:16-cv-2985-L-BGS, 2017 WL 5548777, at *5 (S.D. Cal. Nov. 16, 2017).

Case or the settlement agreement that resolved them. Those specifically asserted liability for and release of Servicing Claims, as well. **Exhibit 4** (D.C. ECF 32, ¶¶ 31, 38, 39, 40, 48, 49, 63, 87, 89, 93, 94, 95, 103); **Exhibit 5** (Settlement Agreement, § 3.03(y) (releasing Rep and Warranty *and* Servicing Claims)). The Court ought not accept Plaintiff's allegations that contradict the settlement agreement and D.C. Case court file, especially Plaintiff's own contentions in that case. *See Smith*, 2007 WL 3341387, at *3.

Plaintiff's omission of master servicers and servicers, including JPMC, is prejudicial to Defendant because losses on mortgage loans containing breaches of representations and warranties can be mitigated or exacerbated by post-default loan servicing. *See, e.g.*, *Bank of America, Nat. Assoc. v. Wells Fargo Bank, N.A.*, Nos. 12 C 9612, 13 C 5605, 2014 WL 3639190, at *3 (N.D. Ill. July 23, 2014) ("Thus, it is quite possible that the manner in which Midland serviced a particular loan post-default would affect the Purchase Price that Bank of America would have to pay upon repurchase."); *see also*, *generally* **Exhibit 7** (excerpted from Talcott J. Franklin & Thomas F. Nealon III, *Mortgage and Asset Backed Securities Litigation Handbook*, § 1.63 (2016)). Thus, Rep and Warranty Claim and Servicing Claim losses are intertwined such that the master servicers and servicers must be made parties to any action seeking recovery of alleged losses on mortgage loans.

This is especially true because the risk of—and therefore the liability for—servicing-related losses may well be allocable to the servicer, not the loan originator or, as here, the broker:

> [O]ne cannot infer from the MLPA and PSA that the risk of inadequate servicing of the loans post-default was allocated to LaSalle. The documents create obligations on the special servicer to service loans that have been transferred to it and that set of obligations does not cease upon notice to the seller of breach or subsequent default by the seller in performing one of the contractual remedies. In other words, the contracts support the argument LaSalle makes as a matter of equity: control of servicing the loans has remained throughout the post-default period in Crown NorthCorp whom LaSalle has had no ability to direct or control. Therefore at the bench trial on damages, LaSalle may offer evidence of

Crown NorthCorp's failure to perform its duties as special servicer to the extent those failures have increased the Purchase Price now payable.

*Wells Fargo Bank, N.A. v. Lasalle Bank Nat. Assoc.*, No. 3:07–cv–449, 2010 WL 2873661, at *2 (S.D. Ohio. July 10, 2010); *see also Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Assoc.*, No. CIV–08–1125–C, 2011 WL 3739170, at *6 (W.D. Okla. Aug. 23, 2011) (finding "the parties did not allocate to Defendant the risk of any failure by the special servicer in servicing the loans post-default").

Indeed, the fact that Defendant is not liable for servicing losses is made plain by the Agreements, themselves, each of which, depending on the Agreement under which a given loan was sold, allocates to Defendant only those losses resulting from inaccurate or incomplete loan documentation, ECF 22-1, ¶ 14, or arising from or relating to acts or omissions of Defendant in connection with a loan application, ECF 22-2 ¶ 6. That is, losses arising from or exacerbated by the manner in which third parties serviced the loans are not covered by the Agreements.

Therefore, since Plaintiff resolved the Servicing Claims together with Rep and Warranty Claims when it settled the D.C. Case, and since it seeks to pass that liability on to Defendant in this case, it must both identify and join JPMC and any other master servicer or servicer—precisely as Plaintiff argued DBNTC should have done in the D.C. Case:

> To the extent there is any doubt about the scope of the liabilities assumed in the P&A Agreement, it can only be resolved by joining JPMC, given "the possibility of inconsistent rulings, incomplete relief, and duplicative litigation exist[s]" if this action were to proceed in JPMC's absence. <u>Sta-Rite Indus. v. Allstate Ins. Co.</u>, 96 F.3d 281, 284 (7th Cir. 1996); <u>accord Schlumberger Indus. v. Nat'l Sur. Corp.</u>, 36 F.3d 1274, 1285-87 (4th Cir. 1994). Moreover, it is likely that proceeding without JPMC could leave FDIC Receiver "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," because proceeding to judgment conceivably could (though should not) result in both the FDIC and JPMC being found liable, but only the FDIC being required to provide relief as the only named defendant. Fed. R. Civ. P. 19(a).

**Exhibit 1** (D.C. ECF 20-1 at 22-23).

Finally, as Plaintiff also argued in the D.C. Case, JPMC is a federally charted national bank with global operations and, therefore, "[t]here is no reason to believe that joinder of JPMC is not feasible." *Id.*, at 23 and n.14. If joinder is not feasible, dismissal is the appropriate remedy. Fed. R. Civ. P. 12(b)(7). It would be inequitable for Plaintiff to proceed solely against Defendant where the losses for which Plaintiff seeks indemnification include losses from loan servicing for which Defendant bears no liability. Plaintiff argued the same when it was a defendant and should not be heard to suggest otherwise here.

### C. Plaintiff failed to state a claim on which relief may be granted because Plaintiff has not plausibly pleaded a right to indemnification under the Agreements.

#### 1. The Agreements govern Plaintiff's right to indemnification and demonstrate that Plaintiff has not stated a claim.

The 2004 and 2005 Agreements are governed by California and Washington law, respectively. ECF 22-1, 22-2. Both states' laws look to the indemnification provision to determine if the claims are within its scope, though Washington places certain public policy limitations on them. *See, e.g.*, *Wells Fargo Bank v. Darmont Const. Corp.*, 2:20-cv-10013-VAP-PDx, 2021 WL 5862170, at * 3 (C.D. Cal. July 21, 2021) ("The rules governing express contractual indemnity clauses permit great freedom of action to the parties in the establishment of the indemnity arrangement while at the same time subjecting the resulting contractual language to the established rules of construction.") (internal quotations and citations omitted); *Stocker v. Shell Oil Co.*, 176 P.2d 306, 308 (Wash. 1986).

"The interpretation of a contract is a mixed question of law and fact. When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law…." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). Consequently, the Court may dismiss a contract action where the allegations in the complaint do not constitute a cognizable cause of action. *E.g., Low v. LinkedIn Corp.*,

900 F.Supp.2d 1010, 1029 (N.D. Cal. 2012). For the reasons stated below, Plaintiff has not stated a claim *under the Agreements* for any of the 23 loans, and the Court should dismiss under Rule 12(b)(6)

### 2. Plaintiff has no viable claim under the Agreements for lack of an actual loss

Solely for purposes of this motion, Defendant assumes the Agreements' indemnification provisions are enforceable. The indemnification provision of the 2004 Agreement provides:

> 14. Broker will indemnify, defend and hold Lender and its officers, agents, employees and representatives harmless from any and all costs, claims, charges, actions, causes of action, losses or liability arising either directly or indirectly, regardless of any indemnitee's negligence, by reason of Broker's negligence, a breach of the terms or conditions of this Agreement, or in any way as a result of an inaccurate or incomplete application or other documentation prepared by or at the direction of Broker. Broker's duty to defend and indemnify Lender under this paragraph shall arise immediately upon notice by Lender, without the requirement that Lender have previously become liable to others or have been required to pay any amounts whatsoever. To the extent Lender determines Broker has breached any provision(s) of this Agreement and there are due and owing any sums of money from Lender to Broker, Lender shall be entitled to withhold all such sums as a set off which set off shall be in addition to, and not to the exclusion of, any other remedies available to Lender. The provisions of this paragraph shall remain effective and inure to the benefit of Lender and its officers, agents, employees and representatives not withstanding the expiration, cancellation, termination or completion of this Agreement.

ECF 22-1.

The indemnification provision of the 2005 Agreement provides:

> **6. EVENTS OF DEFAULT; REMEDIES; INDEMNIFICATION**
>
> Broker will be in default under this Agreement upon the occurrence of any Event of Default under the Broker Guide, and will be subject to any remedies available to Lender, including (but not limited to) indemnification of Lender, and Broker's obligation to purchase one or more of the Mortgage Loans, as more fully set forth in the Broker Guide. Broker agrees to indemnify, hold harmless, and defend Lender, its directors, officers, employees, agents, successors and assigns (collectively, the "Indemnified Parties") from and against any and all losses, claims, demands, damages, expenses or costs (including, but not limited to, reasonable attorneys' fees and costs incurred by any Indemnified Party, with or without suit) which in any way arise out of or relate to

> an alleged act or omission of Broker or any of its directors, officers, employees, or agents in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement. Broker will give Lender immediate notice of any suit or action instituted against Broker which relate to an Applicant, an Application Package, a Mortgage Loan or Broker's activities in connection with this Agreement, and Lender shall have the right to participate in any such suit or action. Lender reserves the right to approve Broker's selection of attorneys hired by Broker to protect Lender's interests.

ECF 22-2.

According to Plaintiff, Plaintiff's settlement of the D.C. Case caused it to suffer losses in connection with the at-issue loans. ECF 22, ¶ 26. Aside from rendering the Amended Complaint unripe, Plaintiff's failure to plead <u>actual</u> losses also means it has not stated a claim for indemnification under California or Washington law. *See*, *e.g.*, *Valley Crest Landscape Dev., Inc. v. Mission Pools of Escondido, Inc.*, 238 Cal. App. 4th 468, 481, 189 Cal. Rptr. 3d 259, 269 (Cal. App. 2015) ("A cause of action for breach of an express indemnity agreement (contractual indemnity) accrues when the indemnitor sustains the loss by paying the money sought to be indemnified from the indemnitee."); *accord Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1195 (C.D. Cal. 2003), *aff'd sub nom. Carson Harbor Vill. v. Cnty. of Los Angeles*, 433 F.3d 1260 (9th Cir. 2006) ("A plaintiff suing to recover on an indemnity contract must prove, inter alia, that it has suffered a loss within the meaning of the parties' indemnification agreement, as well as the amount of the loss sustained."); *Puget Sound Imp. Co. v. Frankfort Marine, Acc. & Plate Glass Ins. Co.*, 100 P. 190, 193 (Wash. 1909) ("Inasmuch as the contract in suit was one of indemnity against loss and not against liability merely, there was no right of action on the contract until the assured had actually paid the judgment rendered against it.").

Plaintiff has not met this threshold legal burden. Plaintiff's failure to plead any actual loss has a practical consequence, as well. Without an actual loss against which Plaintiff is to be indemnified, the Court cannot fashion an indemnification award. What Plaintiff seeks is, in fact, a windfall through an award of indemnification without having

13
NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR CONTRACTUAL INDEMNITY

paid the underlying liability. This not only misapplies the very concept of indemnification but violates Plaintiff's implied duty of good faith and fair dealing.

Plaintiff also alleges in the Amended Complaint that Defendant "breached its obligations to indemnify [Plaintiff]…." ECF 22, ¶ 34. However, "[a] breach of contract without damages is not actionable" and "[n]ominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury." *Low*, 900 F.Supp.2d at 1028 (citations omitted). "A basic principle of contract law is that the purpose of contract damages is to put a plaintiff in the same economic position he or she would have occupied had the contract been fully performed." *Id*., at 1029 (citation and internal quotations omitted); *accord Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. 1995) (damages are an element of a breach of contract claim).

Since Plaintiff has not plausibly pleaded an actual loss, its economic position has not changed as the result of any alleged breach by Defendant. For this reason, too, the Court should dismiss the Complaint.

### 3. Plaintiff has no viable claim under the Agreements for lack of causation.

Assuming for the sake of argument that Plaintiff had pleaded an actual loss, nothing in the settlement agreement or the D.C. Case shows that it was caused by any of the 23 loans at issue in this case. Instead, the claims raised in the D.C. Case and the settlement agreement that resolved them are framed in terms of aggregated losses and an aggregated $3 billion settlement figure that combined both Rep and Warranty Claim liability and Servicing Claim liability for thousands of loans deposited into 99 RMBS Trusts.

The Agreements, however, provide for indemnification on a loan-by-loan basis. The 2005 Agreement shows that indemnification is a loan-by-loan inquiry when it states that Defendant will be liable for "***an*** alleged act…in connection with ***an*** Applicant, ***an*** Application Package, ***a*** Mortgage Loan, or this Agreement." ECF 22-2

(emphasis added). Likewise, the 2004 Agreement, creates indemnification for "***an*** inaccurate or incomplete application or other documentation…." ECF 22-1 (emphasis added).

Thus, Plaintiff must show that a specified breach with respect to one or more specific loans *caused* the indemnifiable loss. This, too, is demonstrated by the Agreements, themselves. As foreshadowed above, the 2004 Agreement shifts liability where the loss is "by reason of" covered misconduct. ECF 22-1, ¶ 14. The 2005 Agreement triggers indemnification liability only where the loss "arise[s] out of or relate[s] to" covered misconduct. ECF 22-2, ¶ 6. Stated differently, Defendant agreed to take responsibility for loan-level breaches that caused harm but not to pay indemnification based on some other calculation that the Amended Complaint does not explain and which may allocate to Defendant losses on loans it did not broker or originate (in addition to allocating to Defendant servicing losses it is not responsible for).

Here, however, there is no pleading that any alleged breach with respect to any alleged loan caused a loss. This is borne out in Plaintiff's loan schedule, attached to the Amended Complaint, which identifies no loss caused by any of the alleged misrepresentations. Even assuming these loans defaulted, which is not pleaded, and even assuming a loss was suffered, which is not pleaded, mortgage loans may default for any number of reasons that may be unrelated to an alleged misrepresentation. *See generally City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1039-40 (9th Cir. 2021) (noting that "[t]he reason for default could be attributable to many independent factors, such as job loss, a medical hardship, a death in the family, a divorce, a fire or other catastrophe, Covid-19, broader economic trends, or any number of other unpredictable causes not present when the loan was made."); *County of Cook v. Bank of Am. Corp.*, 584 F.Supp.2d 562, 579 (N.D. Ill. 2002) ("Dr. Lacefield's simplistic delimiter analysis also fails to account for either the macroeconomic or the individualized reasons that he concedes influence the likelihood of borrower default.").

Thus, Plaintiff has not pleaded the required indemnification elements of loss or causation.

## IV. Conclusion

Therefore, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety. Plaintiff's claims are unripe. Plaintiff failed to join parties responsible for Servicing Claim liability it now merges into the Rep and Warranty Claim liability it asserts solely against Defendant. This nonjoinder is prejudicial to Defendant because Defendant is not responsible for that component of losses—the servicers are. Therefore, in equity and good conscience, the case should not proceed in the absence of any master servicer and servicer who may be responsible for the alleged losses. The Court should also dismiss the Complaint because it fails to state a cognizable cause of action under the Agreements. Plaintiff has not pleaded any loss at all, and, even if it had, Plaintiff has not pleaded that any of the 23 loans caused the loss it seeks to shift to Defendant. The Agreements require a causal connection between some indemnifiable conduct on the part of Defendant and harm allegedly suffered.

DATED this 28th day of July, 2023.

**FOSTER GRAHAM MILSTEIN & CALISHER, LLP**

*/s/ Michael A. Rollin*
Daniel K. Calisher
Michael A. Rollin
*Attorneys for Defendant*